IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CEDAR BAND OF PAIUTES; CEDAR BAND CORPORATION; and CBC MORTGAGE AGENCY,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; DR. BENJAMIN S. CARSON, SR., in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; FEDERAL HOUSING ADMINISTRATION; and BRIAN D. MONTGOMERY, in his official capacity as Acting Deputy Assistant Secretary and Assistant Secretary of Housing and Urban Development for Housing-Federal Housing Commissioner,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [6] MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 4:19-cv-30-DN-PK<br><br>District Judge David Nuffer |

On April 22, 2019, Plaintiffs Cedar Band of Paiutes (the "Cedar Band"), Cedar Band Corporation ("CBC"), and CBC Mortgage Agency ("CBCMA") (collectively, "Plaintiffs") filed a Complaint[1] against Defendants U.S. Department of Housing and Urban Development ("HUD"), Dr. Benjamin S. Carson, Sr. in his official capacity as Secretary of HUD, the Federal Housing Administration ("FHA"), and Brian D. Montgomery in his official capacity as Acting Deputy Assistant Secretary and Assistant Secretary of HUD for Housing–Federal Housing Commissioner (collectively "Defendants"). The central aim of Plaintiffs' Complaint is to have

---

[1] Complaint, docket no. 2, filed April 22, 2019.

the Mortgagee Letter 19-06 (the "2019 Mortgagee Letter")[2] that Defendants issued on April 18, 2019, set aside under the Administrative Procedures Act ("APA").[3]

On the same day Plaintiffs filed their Complaint, Plaintiffs also filed the Motion For Ex Parte Temporary Restraining Order and Preliminary Injunction ("Motion").[4] In their Motion, Plaintiffs sought a preliminary injunction enjoining Defendants from enforcing the 2019 Mortgagee Letter during the pendency of this litigation.[5]

A hearing on the Motion was scheduled for April 25, 2019. However, on April 24, 2019, the parties jointly moved to strike the hearing[6] because Defendants agreed they would stay enforcement of the 2019 Mortgagee Letter for a period of 90 days after the motion to strike the hearing was granted. The parties' motion to strike the hearing was granted the same day it was filed, and the 90 day stay of the enforcement was set to expire July 23, 2019.[7]

Defendants responded to the Motion on June 7, 2019,[8] and Plaintiffs filed their reply on June 26, 2019.[9] Amici were also permitted to file briefs in support of, and in opposition to, the

---

[2] Complaint, Exhibit A, Mortgagee Letter 19-06 ("2019 Mortgagee Letter"), docket no. 6-2, filed April 22, 2019.

[3] Complaint. at 45–48.

[4] Motion for *Ex Parte* TRO/TRO/AND Preliminary Injunction ("Motion"), docket no. 6, filed April 22, 2019.

[5] *Id.* at 3.

[6] Joint Motion to Strike Hearing on Motion for Temporary Restraining Order and Motion for Scheduling Order on Motion for Preliminary Injunction, docket no. 32, filed April 24, 2019.

[7] Order Granting [32] Joint Motion to Strike Hearing on Motion for Temporary Restraining Order and Motion for Scheduling Order on Motion for Preliminary Injunction, at 2, filed April 24, 2019.

[8] Memorandum in Opposition to Motion for Preliminary Injunction ("Opposition"), docket no. 69, filed June 7, 2019.

[9] Plaintiff's Reply in Support of Plaintiff' Motion for a Preliminary Injunction ("Reply"), docket no. 73, filed June 26, 2019.

Motion.[10] The parties presented oral argument at a hearing held on July 16, 2019.[11] At the conclusion of that hearing, a decision was announced granting the Motion.[12] The following memorandum decision and order memorializes that decision.

**Contents**

BACKGROUND ........................................................................................................................ 3
DISCUSSION ........................................................................................................................... 7
    1.    Plaintiffs Have Demonstrated a Likelihood of Success on the Merits. .................. 8
        A.    Issuing the 2019 Mortgagee Letter Without Notice and Comment Likely Violated Provisions of the APA Adopted by HUD Because the Letter is a Legislative, Rather Than an Interpretive Rule. ........................................... 9
        B.    The 2019 Mortgagee Letter is Likely Arbitrary and Capricious Under the APA. ................................................................................................................ 13
    2.    Plaintiffs Have Demonstrated That They Are Suffering Irreparable Harm. .......... 16
    3.    Plaintiffs Have Demonstrated That the Balance of Harms and Public Interest Weigh in Their Favor. ............................................................................................. 16
ORDER AND PRELIMINARY INJUNCTION .......................................................................... 17

## BACKGROUND

The Cedar Band is a federally recognized American Indian Tribe.[13] The Cedar Band is comprised of 380 enrolled members[14] and its reservation encompasses approximately 2,200 acres—roughly three and a half square miles—located near Cedar City, Utah.[15] CBC is a tribal corporation of the Cedar Band which has chartered CBCMA.[16] CBCMA's charter allows it to do

---

[10] Amici Curiae Brief of the Housing Finance Agencies of Alaska, Idaho, Pennsylvania, Tennessee, Virginia, Washington, and Wyoming in Opposition to Motion for Preliminary Injunction, docket no. 64, filed May 24, 2019; Amici Curiae Brief of Data Mortgage, Inc., and American Financial Network in Support of Plaintiffs' Motion for Preliminary Injunction, docket no. 72, filed June 14, 2019.

[11] Minute Order, Proceedings Before Judge Nuffer, docket no. 76, filed July 16, 2019.

[12] *Id.*

[13] Complaint at 5.

[14] Motion at 11.

[15] Complaint at 5.

[16] *Id.*

3

business nationwide.[17] The Cedar Band relies on income derived from CBC and CMCMA to fund services for its members, including housing, education, and security.[18]

CBCMA is registered as a Governmental Mortgagee with HUD.[19] Through its program, the Chenoa Fund, CBCMA provides downpayment assistance ("DPA") for mortgage loans insured by the FHA that are originated by other lenders, as well as a small number of conventional loans.[20] The FHA insures the vast majority of loans for which CBCMA provides DPA.[21] CBCMA then purchases the first mortgages and sells them on a secondary market.[22]

Provisions related to FHA insurance, including provisions related to the minimum required investment ("MRI") for FHA insured loans, are codified at 12 U.S.C § 1709. In 2007, HUD published a final rule (the "2007 Rule") that prohibited "sellers" from providing DPA "in their own home sales transactions" through an arrangement where "a so-called charitable organization provides a so-called gift to a homebuyer from funds that it receives, directly or indirectly, from the seller."[23] The 2007 Rule exempted governmental entities from this prohibition. The rule expressly specified that DPA "is permitted . . . from . . . governments."[24] The 2007 Rule also specifically provided "that a tribal government . . . is a permissible source of downpayment assistance."[25]

---

[17] *Id.* at 6.

[18] *Id.* at 5.

[19] *Id.* at 6.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Standards for Mortgagor's Investment in Mortgaged Property, 72 Fed. Reg. 56002, 56002–03 (Oct. 1, 2007).

[24] *Id.*

[25] *Id.*

In 2008, two separate district courts held that the 2007 Rule's prohibition of seller-funded DPA violated the APA.[26] Both courts vacated the 2007 Rule.[27] Later that year, Congress enacted changes to 12 U.S.C § 1709, formally incorporating some of the guidance of the 2007 Rule into statute.[28] Specifically, 12 U.S.C. § 1709 was amended to provide that the MRI for a FHA insured loan could not

> consist, in whole or in part, of funds provided by any of the following parties before, during, or after closing of the property sale: (i) The seller or any other person or entity that financially benefits from the transaction. (ii) Any third party or entity that is reimbursed, directly or indirectly, by any of the parties described in clause (i).[29]

Notably, the 2008 amendments did not address the provision of DPA towards FHA insured loans by governmental entities.

In 2012, HUD addressed that issue in an interpretive rule published in the Federal Register (the "2012 Rule").[30] According to the 2012 Rule, it was HUD's interpretation that 12 U.S.C. § 1709 "did not prohibit FHA from insuring mortgages originated as part of the homeownership programs of Federal, State, or local governments or their agencies or instrumentalities when such agencies or instrumentalities also directly provide funds toward the required minimum cash investment."[31]

---

[26] *Nehemiah Corp. of Am. v. Jackson*, 546 F. Supp. 2d 830 (E.D. Cal. 2008); *Penobscot Indian Nation v. HUD*, 539 F. Supp. 2d 40 (D.D.C. 2008).

[27] *Id.*

[28] Housing and Economic Recovery Act of 2008, Pub. L. 110-289, 122 Stat. 2654, 2831–32.

[29] 12 U.S.C. 1709(b)(9).

[30] Federal Housing Administration: Prohibited Sources of Minimum Cash Investment Under the National Housing Act—Interpretive Rule, 77 Fed. Reg. 72219 (Dec. 5, 2012).

[31] *Id.* at 72222.

Current HUD policy, set forth in HUD Handbook 4000.1,[32] continues to provide that governmental entities can provide DPA in connection with originating a first mortgage,[33] as a gift,[34] and as secondary financing.[35] HUD Handbook 4000.1 defines "Governmental Entity" as "any state, federal, or local government agency or instrumentality."[36]

HUD issued the 2019 Mortgagee Letter on April 18, 2019.[37] In explaining why the letter was necessary, Defendants offered:

> It has come to FHA's attention that certain Governmental Entities may be acting beyond the scope of any inherent or granted governmental authority in providing funds towards the Borrower's MRI in circumstances that would violate Handbook 4000.1, the National Housing Act, and is contrary to established law. In reviewing its current documentation requirements for Mortgagees, FHA has determined that those requirements should be clarified to provide Mortgagees with specific guidance regarding documentation that will give greater assurances that the standards for providing the MRI have been satisfied by the Governmental Entity.

The 2019 Mortgagee Letter's stated purpose was to

> clarify documentation requirements that FHA-approved Mortgagees must satisfy when originating a mortgage for a Borrower using funds from another person or entity to satisfy a portion or all of the Minimum Required Investment (MRI), including specific documentation that adequately demonstrates the existing requirement that Governmental Entities are operating in their governmental capacity when providing downpayment assistance pursuant to the December 5, 2012 Interpretive Rule.[38]

The documentation requirements announced in the 2019 Mortgagee Letter included the requirement that a Mortgagee must obtain

---

[32] HUD Handbook 4000.1 (Mar. 27, 2019), *available at* https://www.hud.gov/sites/dfiles/SFH/documents/sfh_hb_4000_1.pdf.

[33] *Id*. at 225–226.

[34] *Id.* at 229–230.

[35] *Id.* at 235–236.

[36] *Id.* at 234.

[37] Complaint at 19.

[38] 2019 Mortgagee Letter at 1.

6

a legal opinion signed and dated within two years of closing of the transaction by attorneys for the Governmental Entity stating [that]: the attorney has reviewed the Governmental Entity's downpayment assistance program; and either the Governmental Entity is considered within the jurisdiction in which the Property is located to be either a federal, state (as defined in Section 201(d) of the National Housing Act (12 U.S.C. §1707(d)), or local government or agency or instrumentality thereof, as provided in Section 528 of the National Housing Act (12 U.S.C §1735f-6), and 24 CFR 203.32(b) and further clarified in the SF Handbook.; the Governmental Entity is a federally recognized Indian Tribe operating on tribal land in which the Property is located or to enrolled members of the tribe . . . .[39]

According to Plaintiffs, because the 2019 Mortgagee Letter prohibited CBCMA from operating anywhere but on its reservation and serving anyone but one of the Cedar Band's enrolled members, the effect on CBCMA's operations was immediate.[40] By the close of business on April 19, 2019, almost every lender had stopped doing business with CBCMA.[41] And even after CBCMA's relationships with lenders resumed following HUD's agreement to stay the effect of the 2019 Mortgagee Letter until July 23, 2019, Plaintiffs represented that CBCMA's business is down 30 percent.[42]

## DISCUSSION

To obtain a preliminary injunction, a movant "must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[43]

---

[39] *Id.* at 5.

[40] Complaint at 22.

[41] *Id.* at 23.

[42] Minute Order, Proceedings Before Judge Nuffer, docket no. 76, filed July 16, 2019.

[43] *Gen. Motors Corp. v. Urban Gorilla*, LLC, 500 F.3d 1222, 1226 (10th Cir.2007).

Plaintiffs have made the required showing under each element. Defendants will be enjoined from enforcing the 2019 Mortgage Letter during the pendency of this litigation.

1. **Plaintiffs Have Demonstrated a Likelihood of Success on the Merits.**

Plaintiffs argue that the 2019 Mortgagee Letter is likely contrary to law for several reasons. These include that: (1) issuing the 2019 Mortgagee Letter without notice and comment violated the APA;[44] (2) the 2019 Mortgagee Letter itself is an arbitrary and capricious action under the APA;[45] (3) Defendants do not have the statutory authority for the sort of action outlined in the 2019 Mortgagee Letter;[46] (4) issuing the 2019 Mortgagee Letter violated Plaintiffs' due process rights and amounts to an unconstitutional taking.[47]

After reviewing Plaintiffs' arguments, Defendants' responses, and the provided case law, Plaintiffs are most likely to succeed on the merits of their APA and public rulemaking related arguments. The remaining merits-based arguments will not be analyzed because, in contrast to the well-developed APA and public rulemaking arguments, Plaintiffs have only provided limited legal authority in support of their constitutional and statutory arguments. Defendants respond to these arguments either by asserting that Plaintiffs have cited to inapplicable and distinguishable law (an assertion to which Plaintiffs offer no meaningful response) or by reiterating variants of the same arguments they offer against Plaintiffs' APA and public rulemaking arguments. The state of the briefing on Plaintiffs' constitutional and statutory arguments does not permit a determination on the likelihood of success element for those arguments.

---

[44] Motion at 13–16.

[45] *Id.* at 17–18.

[46] *Id.* at 20–22.

[47] *Id.* at 19.

### A. Issuing the 2019 Mortgagee Letter Without Notice and Comment Likely Violated Provisions of the APA Adopted by HUD Because the Letter is a Legislative, Rather Than an Interpretive Rule.

Plaintiffs argue that the 2019 Mortgagee Letter violated notice and comment requirements set forth in the APA at 5 U.S.C. § 553.[48] Plaintiffs contend (1) that public notice and comment was required before the 2019 Mortgagee Letter was issued because the letter is a legislative rule with the force and effect of law;[49] (2) that because notice and comment procedures were previously used to promulgate rules regarding governmental entities and DPA, the APA mandates that notice and comment procedures should have been used again;[50] and (3) that HUD violated its own internal policy to participate in public rulemaking.[51]

Plaintiffs' second argument fails because Defense Counsel clarified at the hearing that HUD did not seek public comment in *advance* of issuing the 2012 Interpretive Rule, the rule that preceded the 2019 Mortgagee Letter.[52] At the publication of the 2012 Interpretive Rule, HUD invited public comments *after* that rule took effect.[53] Plaintiffs cannot argue that Defendants were mandated to use notice and comment procedures in advance of issuing the 2019 Mortgagee Letter because those procedures were not used to prior to issuing the 2012 Interpretative Rule. However, despite the failure of Plaintiffs' second argument, Plaintiffs have still shown a likelihood of success on their first and third arguments regarding notice and comment. These arguments are the focus of this section.

---

[48] *Id.* at 14.

[49] *Id.* at 14–15.

[50] *Id.* at 15–16.

[51] *Id.* at 16.

[52] Minute Order, Proceedings Before Judge Nuffer, docket no. 76, filed July 16, 2019.

[53] Federal Housing Administration: Prohibited Sources of Minimum Cash Investment Under the National Housing Act—Interpretive Rule, 77 Fed. Reg. at 72219, 72219.

Under the APA, government agencies are required to publish "general notice of proposed rule making" in the Federal Register and provide "interested persons an opportunity to participate in the rule making" by submitting comments on the proposed agency rule.[54] However, notice, and therefore public comment, is not required if the rule being issued is an interpretive rule or a general statement of policy.[55] Furthermore, the rule making provisions of the APA do not apply to matters relating to "public property[] [or] loans," meaning that most of HUD's agency actions are exempt from the APA's requirements.

Despite these identified exemptions, HUD has enacted a policy, codified at 24 C.F.R. § 10.1, that adopts the public rulemaking provisions of the APA in order "to provide for public participation in rulemaking with respect to *all* HUD programs and functions, including matters that relate to public property, loans, grants, benefits, or contracts *even though such matters would not otherwise be subject to rulemaking by law* or Executive policy.[56] This policy is not all encompassing because 24 C.F.R. § 10.1 also contains an interpretive rule exemption: "Notice and public procedure may . . . be omitted with respect to statements of policy, interpretative rules, rules governing the Department's organization or its own internal practices or procedures, or if a statute expressly so authorizes."[57]

Because other courts have recognized that HUD has "voluntarily . . . adopted requirements for notice and comment rulemaking"[58] and held HUD accountable when it sought

---

[54] 5 U.S.C. § 553(b), (c).

[55] 5 U.S.C. § 553(b)(A).

[56] 24 C.F.R. § 10.1 (emphasis added).

[57] *Id.*

[58] *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 447 (9th Cir. 1994).

to avoid compliance with 24 C.F.R. § 10.1,[59] the determinative question here is whether the 2019 Mortgagee Letter is an interpretative rule exempt from the public rulemaking provisions HUD has adopted from the APA.

The Tenth Circuit Court of Appeals recognizes that "legislative rules can be issued only following notice and comment procedures."[60] "Interpretative rules, by contrast" do not require notice and comment because these rules "advise the public of the agency's construction of the statutes and rules which it administers."[61] Because "[a]n agency's own label for its action is not dispositive[,]"[62] the 2019 Mortgagee Letter must be scrutinized to determine whether it is a legislative rule or an interpretive rule.

A rule is legislative when it "has the force of law and creates new law or imposes new rights or duties."[63] The United States Court of Appeals for the District of Columbia Circuit has offered criteria for evaluating whether a rule has the force of law, and is therefore legislative:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.[64]

"If the answer to any one of these questions is affirmative" the rule is "legislative not an interpretive rule . . . ."[65] And, as the Tenth Circuit Court of Appeals has clarified, to be an

---

[59] *Patriot, Inc. v. HUD*, 963 F. Supp. 1, 4-5 (D.D.C. 1997); *Housing Study Grp. v. Kemp*, 736 F. Supp. 321, 325-29 (D.D.C. 1990).

[60] *Sorenson Communications*, Inc. v. F.C.C., 567 F.3d 1215, 1222 (10th Cir. 2009) (citing *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1158 (10th Cir.2006)).

[61] *Id.* (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)).

[62] *Id.*

[63] *Id.* (quoting *FDIC v. Schuchmann*, 235 F.3d 1217, 1222 (10th Cir.2000)).

[64] *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir.1993).

[65] *Id.*

interpretive rule, "[t]here must be a path that runs from the statute to rule" that shows how the agency has arrived at its interpretation "rather than mere[] consistency between the statute and rule."[66]

Defendants argue that the 2019 Mortgagee Letter is interpretive because it merely reiterated the jurisdictional limitations on the provision of DPA by governmental entities that were already present in the 2012 Interpretative Rule and HUD's Handbook.[67] Notably, however, the 2012 Interpretive Rule does not contain the term "governmental capacity" which is contained in the 2019 Mortgagee Letter. The 2012 Interpretive Rule does not refer to a geographic limitation on a governmental jurisdiction, and instead uses the word "jurisdiction" in a different sense, to describe the actions of some HFAs, not in a regulatory sense. The only reference in the 2012 Interpretive Rule to "jurisdiction" is in its background section: "In many cases, a local agency may be the local government itself. HFAs provide various services to assist citizens within their jurisdictions in attaining affordable housing options."[68] Governmental capacity, or jurisdiction is not mentioned anywhere else in the 2012 Interpretive Rule, including in its interpretive issue section.

And although the current HUD Handbook reflects provisions of the 2012 Interpretative Rule, that handbook does not define terms relating to "governmental entities" acting in their "governmental capacities." The 2019 Mortgagee Letter does not define these terms either, neither expressly nor in a way that provides clear advice to the public regarding Defendants'

---

[66] *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1158 (10th Cir. 2006) (quoting *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 783 n. 8 (10th Cir.1998)).

[67] Opposition at 14.

[68] Federal Housing Administration: Prohibited Sources of Minimum Cash Investment Under the National Housing Act—Interpretive Rule, 77 Fed. Reg. at 72219, 72220.

chosen construction of the 2012 Interpretative Rule and how Defendants arrived at that construction.

The path running from the statute—12 U.S.C. § 1709(b)(9)—through the 2012 Interpretive Rule and HUD Handbook and finally to the 2019 Mortgagee Letter does not clearly show how Defendants arrived at these purportedly interpretive jurisdictional limitations. Furthermore, apart from the 2019 Mortgagee Letter, it does not appear that Defendants would readily have an adequate basis to enforce jurisdictional limitations on governmental entities providing DPA.

Instead, the 2019 Mortgagee Letter imposes unprecedented, new duties on mortgagees to obtain letters showing that the governmental entity is providing DPA to someone within its own jurisdictional boundaries (and in the case of tribes, to a tribal member) or the DPA will be used toward an FHA insured loan to purchase property within that governmental entity's jurisdiction. The 2019 Mortgagee Letter is more legislative in character than interpretive because it articulates new duties that were immediately imposed on mortgagees for the first time. Therefore, HUD's action in the 2019 Mortgagee Letter should likely have been preceded by notice and comment.

**B. The 2019 Mortgagee Letter is Likely Arbitrary and Capricious Under the APA.**

Plaintiffs are also likely to prevail on their argument that the 2019 Mortgagee Letter is arbitrary and capricious. Plaintiffs argue that the 2019 Mortgagee Letter is arbitrary and capricious under the APA for two reasons: (1) because HUD failed to abide by its internal policy to consult with individual tribes before drafting and adopting a policy that has tribal

implications;[69] and (2) because the 2019 Mortgagee Letter offers no reasoned explanation as to why it was issued.[70]

HUD has adopted a policy that it consult "with individual tribes" "to the greatest extent practicable" (i) when it drafts a policy that will have "tribal implications," and again (ii) before it adopts such a policy.[71] "Policies that have tribal implications" are those "regulations, legislative proposals, [or] other policy statements or actions that have substantial direct effects on one or more Indian tribe[s]."[72] "'Consultation' means the direct and interactive (i.e., collaborative) involvement of tribes in the development of regulatory policies on matters that have tribal implications."[73]

In response to Plaintiffs' argument that it was arbitrary and capricious not to follow this consultation policy, Defendants offer the unpersuasive argument that the policy is not binding.[74] As the Eighth Circuit Court of Appeals has recognized, where an agency has

> established a policy requiring prior consultation with a tribe, and has thereby created a justified expectation on the part of the Indian people that they will be given a meaningful opportunity to express their views before [agency] policy is made, that opportunity must be afforded. Failure of the Bureau to make any real attempt to comply with its own policy of consultation . . . violates those general principles which govern administrative decision making.[75]

The 2019 Mortgagee Letter has clear implications for Plaintiffs. Based on HUD's adoption of a tribal consultation policy, Plaintiffs understandably had the justified expectation they would be able to consult with Defendants, particularly when Defendants were

---

[69] Motion at 17.

[70] *Id.* at 17–18.

[71] Tribal Government-to-Government Consultation Policy, 81 Fed. Reg. 40893, 40896 (June 23, 2016).

[72] *Id.* at 40895.

[73] *Id.*

[74] Opposition at 20.

[75] *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 721 (8th Cir. 1979).

contemplating taking *legislative* action. Issuing the 2019 Mortgagee Letter without consulting Plaintiffs is likely arbitrary and capricious.

In opposing the argument that the 2019 Mortgagee Letter is arbitrary and capricious because it failed to offer a reasoned explanation, Defendants reassert that the letter was interpretive and not legislative.[76] Therefore, Defendants argue, requirements such as providing a reasoned explanation do not apply.[77] Because it has been determined that the 2019 Mortgagee Letter is likely legislative in character rather than interpretative, this argument is unpersuasive.

Furthermore, as the Supreme Court has recently noted, agencies are "free to change their existing policies as long as they provide a reasoned explanation for the change."[78] When an agency changes its existing position, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate."[79] But the agency must at least "display awareness that it is changing position" and "show that there are good reasons for the new policy."[80]

Although the 2019 Mortgagee Letter attempted to explain that it was issued to clarify additional requirements, it does not contain an explanation—reasoned or otherwise—why it also imposes jurisdictional limitations on governmental entities. And Defendants do not acknowledge in the 2019 Mortgagee Letter that the letter represented a significant change, particularly considering the 2012 Interpretive Rule and the HUD Handbook's silence on issues of governmental jurisdiction. Because Plaintiffs have demonstrated a likelihood that they will

---

[76] Opposition at 17–18 n.68.

[77] *Id.*

[78] *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125–26, (2016).

[79] *Id.*

[80] *Id*.

succeed on these APA arguments, the remaining preliminary injunction factors can be considered.

### 2. Plaintiffs Have Demonstrated That They Are Suffering Irreparable Harm.

As soon as it was issued, the effect of the 2019 Mortgagee Letter clearly threatened—not just hindered—Plaintiffs' business operations. The Tenth Circuit Court of Appeals acknowledges that "a threat to trade or business viability" qualifies as irreparable harm.[81]

Defendants argue that Plaintiffs were never entitled to be profiting from a nationwide mortgage agency in the first place. However, this argument is based in the unpersuasive contention that jurisdictional limitations on governmental entities were set forth in HUD materials prior to the 2019 Mortgagee Letter. Again, these jurisdictional limitations were not clearly provided for until the 2019 Mortgagee Letter took legislative action to set them. In doing so, Defendants' actions have nearly eradicated Plaintiffs' business. Plaintiffs have demonstrated irreparable harm that permits the issuance of a preliminary injunction.

### 3. Plaintiffs Have Demonstrated That the Balance of Harms and Public Interest Weigh in Their Favor.

When the government is the party opposing a preliminary injunction, as is the case here, the factors of considering the harm to the party opposing a motion for preliminary injunction and weighing the public interest merge.[82] These merged factors support implementing a preliminary injunction in this case.

Defendants' decision to stay the effect of the 2019 Mortgagee Letter for 90 days suggests that they stand to suffer little to no harm if the 2019 Mortgagee Letter were to be further stayed

---

[81] *Tri-State Generation & Transmission Association, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 356 (10th Cir. 1986).

[82] *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

by a preliminary injunction. And as to the public interest, "the public interest is best served by having federal agencies comply with . . . the agency's own stated polic[i]es."[83] Defendants may yet implement the sort of changes included in the 2019 Mortgagee Letter, but policy dictates that this sort of *legislative* action must be preceded by rulemaking procedures. Governmental engagement with interested parties—such as tribes—prior to rulemaking benefits the public. Plaintiffs have therefore made the required showing under these factors.

## ORDER AND PRELIMINARY INJUNCTION

IT IS HEREBY ORDERED that the Motion[84] is GRANTED.

IT IS FURTHER ORDERED that Defendants are ENJOINED from any enforcement of Mortgagee Letter 19-06 until further order of this court. Specifically, Defendants shall not deny insurance nor cause insurance to be denied based on noncompliance with Mortgagee Letter 19-06 and shall provide public notice that the effective date of Mortgagee Letter 19-06 is suspended until after a final determination on the merits of the case.

Signed July 23, 2019.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[83] *Patriot, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 963 F. Supp. 1, 6 (D.D.C. 1997).

[84] Motion for *Ex Parte* TRO/TRO/AND Preliminary Injunction, docket no. 6, filed April 22, 2019.